UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MARY DIAN SMITH, | ) | Case No. 10-27260 HRT |
| | ) | Chapter 7 |
| Debtor. | ) | |
| RAY RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 10-1749 HRT |
| | ) | |
| v. | ) | |
| | ) | |
| MARY DIAN SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This case comes before the Court on *Defendant's Motion for Summary Judgment* (docket #26) (the "Motion").

In the case of *Richards v. Bradshaw*, Case No. 2009CV766, District Court of Boulder County, Colorado, the court awarded damages to the Plaintiff against the Defendant in the total amount of $619,889.16 (the "State Court Judgment"). Plaintiff's *Amended Objection to discharge of Debt Pursuant to 11 U.S.C. § 523(a)(6) and Complaint in Adversary Proceeding* (docket #4) (the "Amended Complaint"), seeks a judgment in this Court, under 11 U.S.C. § 523(a)(6), declaring that the State Court Judgment is a nondischargeable debt.

I.  FACTS

In the Defendant's presence, her sons Drake and Gavin Bradshaw badly beat the Plaintiff. The result of the attack is that Plaintiff was seriously injured. He brought suit against Defendant and her sons for damages in the District Court of Boulder County, Colorado (the "State Court").

The Plaintiff's State Court complaint sought damages:
1. against Drake and Gavin Bradshaw only for assault;
2. against Drake and Gavin Bradshaw only for battery;
3. against the Defendant as well as Drake and Gavin Bradshaw for intentional infliction of emotional distress; and
4. against the Defendant only for vicarious liability under Colo. Rev. Stat. § 13-21-107.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

The Defendant did not respond to the summons in the State Court action. The State Court held a default hearing and made findings. Based upon Plaintiff's evidence and upon the Defendants' defaults, the State Court entered judgment against Drake, Gavin and the Defendant, jointly and severally, in the amount of $610,720.80 for actual damages, interest, costs, and attorney fees. It entered exemplary damages against Drake and Gavin only in the amount of $610,052.44. Finally, it entered judgment against Defendant only in the amount of $9,168.36 based on COLO. REV. STAT. § 13-21-107, which provides that a strict liability judgment of $3,500.00 plus costs and attorney fees may be obtained against the parent of a minor child who inflicts bodily injury.

The Court explained its reasons for its judgment against the Defendant in its Order re Default Judgment as follows:

> Regarding Mary Bradshaw, the Court holds her vicariously liable for Gavin Bradshaw who was a minor at the time of the offense. Pursuant to statute, she can be held liable for $3,500 plus reasonable costs and attorney fees. In addition, the Court finds her directly negligent. She knew that Gavin and Drake had engaged in violent behavior before and had been charged with violent offenses. She was aware that they were on probation. She did nothing to stop them. In addition, she helped them relate a story to the police that was not true. Judgment for $542,427.44 plus $3,500 is entered against her. The $3,500 is not joint and several with her sons.[1]

## II. DISCUSSION

Section 523(a)(6) provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

In the case of *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court discussed the willfulness prong of the test for nondischargeability under § 523(a)(6). *Geiger* stands for the principal that to establish the willfulness element under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id*. at 61. The actor must "intend 'the *consequences* of an act,' not simply 'the act itself.' *Id*. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

"Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. Willful injury may also be established indirectly by evidence of both

---

[1] The judgment amounts reflected in the State Court's Order re Default Judgment were later increased by the courts allowance of attorney fees and costs.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized injury." *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999).

The malice prong of 11 U.S.C. § 523(a)(6) is satisfied upon a showing the injury was inflicted "without just cause or excuse." *See, e.g., Kuhn v. Driver (In re Driver)*, 305 B.R. 266, 268 (Bankr. N.D. Tex. 2003); *Johnson v. Wood (In re Wood)*, 303 B.R. 370, 373 (Bankr. C.D. Ill. 2003); *Beckett v. Bundick (In re Bundick)*, 303 B.R. 90, 109 (Bankr. E.D. Va. 2003); *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 485 (S.D. N.Y. 2003); *McAlister v. Slosberg*, 225 B.R. 9, 21 (Bankr. D. Me. 1998).

A.  Collateral Estoppel

Defendant relies on the doctrine of collateral estoppel and the finding of negligence embodied in the State Court Order re Default Judgment. She argues that the Plaintiff has fully litigated a theory of intentional tort in the State Court and that court rejected the theory and based its judgment on negligence and on statutory vicarious liability. Because neither theory of liability upon which the State Court based its judgment against her can support a finding of willful and malicious injury under § 523(a)(6), Defendant argues that Plaintiff is collaterally estopped from relitigating the intent issue in this Court.

Indeed, under the doctrine of collateral estoppel, parties may not relitigate issues that have been previously heard and decided by other courts. The State Court did not decide the precise issue before this Court – the dischargeability of its judgment. Nonetheless, the "doctrine of collateral estoppel may be invoked to bar relitigation of factual issues underlying the determination of dischargeability." *Wallace v. Klemens (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988). "A federal court reviewing the preclusive effect of a state court judgment under the collateral estoppel doctrine is guided by the mandates of 28 U.S.C. § 1738, the Full Faith and Credit Statute." *State Farm Fire and Cas. Co. v. Edie (In re Edie)*, 314 B.R. 6, 12 (Bankr. D. Utah. 2004). The Full Faith and Credit Statute mandates that federal courts apply the preclusion law "of the state in which the judgment was rendered." *Id*.

Colorado collateral estoppel doctrine will apply in this adversary proceeding. In Colorado, "collateral estoppel bars relitigation of an issue if the following factors are satisfied: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999). "The burden of establishing these elements rests with the party seeking preclusion." *Id*.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

According to the Colorado Supreme Court, an issue is actually litigated when the parties have raised the issue in the prior action. *Id.* "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other." *Id.* The issue in question must have been submitted for determination and actually ruled on by an "adjudicatory body." *Id.* However, collateral estoppel does not bar litigation of matters that could have been raised in the prior proceeding but were not. *Id* at 86. Additionally, the issue in question must not have only been actually litigated, but also necessary to the previous action, which is to say that the adjudication of the issue was essential to the judgment in the prior court.

In order to determine whether a party had a full and fair opportunity to litigate the issue in the prior proceeding, the following factors are considered: "(1) whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, (2) whether the party against whom collateral estoppel is asserted had sufficient incentive to litigate vigorously, and (3) the extent to which the issues are identical." *Grynberg v. Arkansas Oklahoma Gas Corp.*, 116 P.3d 1260, 1265 (Colo. Ct. App. 2005) (citing *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 87 (Colo. 1999)). The first element "requires an inquiry into whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of collateral estoppel be used to bar relitigation of that issue." *Id.* This means that an individual must have been able to raise the issues that are to be precluded, not that they were required to. *Id.* Additionally, it is important to consider that a party "does not have the same incentive to litigate in the first proceeding if its exposure to liability is substantially less than in the second proceeding." *Id.*

Through the operation of collateral estoppel, a Colorado court's final decision on an issue actually litigated and decided precludes relitigation of that issue in subsequent state or federal actions. *Bebo Constr. Co.*, 990 P.2d at 84.

The only concern for this Court regarding the application of collateral estoppel is whether the issue Defendant seeks to preclude from relitigation is identical to the issue that was decided in the State Court and necessary to the State Court's judgment (first element). Certainly, the Plaintiff was a party in the prior action (second element); the State Court entered a final judgment on the merits of the Defendant's liability for Plaintiff's injuries (third element); and Plaintiff had a full and fair opportunity to litigate (fourth element). In fact, owing to Defendant's default, the State Court made its determination based solely on Plaintiff's evidence.

The Defendant has zeroed in on the critical issue under 11 U.S.C. § 523(a)(6). The bar to discharge in § 523(a)(6) only acts to bar the discharge of injuries caused by intentional torts and not injuries caused by negligence. In the seminal case of *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court addressed that very issue. In that case, the plaintiff had sought medical treatment for an injury to her foot but suffered an amputation of her leg due to the defendant's medical malpractice. She sought to have defendant's liability for her injury declared

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

nondischargeable under § 523(a)(6) in his bankruptcy proceeding. Because liability for medical malpractice is premised on negligent or reckless conduct, the Eighth Circuit Court of Appeals found that discharge of the defendant's liability was not barred by § 523(a)(6)'s prohibition of discharge for debts incurred through "willful and malicious injury." The Supreme Court affirmed. *Id*. at 60.

In *Geiger*, the Supreme Court actually set the bar higher than simply finding that liability on an intentional tort is nondischargeable under § 523(a)(6). That distinction was highlighted by the Tenth Circuit Court of Appeals in the case of *Panalis v. Moore (In re Moore)*, 357 F.3d 1125 (10th Cir. 2004). In that case, the Tenth Circuit applied the holding in *Geiger* to a case involving severe injuries suffered by the plaintiff, an oil field contractor employed by the defendant's company. In a state court trial, the defendant was found liable for fraud and a judgment in excess of $6 million was entered in the plaintiff's favor. After the defendant filed his bankruptcy case, the plaintiff sought to have the judgment excepted from discharge under § 523(a)(6). The defendant's fraud was his misrepresentation to the plaintiff that he maintained insurance that would cover the plaintiff. Because fraud is an intentional tort, the district court held the debt to be nondischargeable under *Geiger*. But the Tenth Circuit reversed and discharged the debt. The Court quoted the Supreme Court, observing that "§ 523(a)(6) pertains to 'only acts done with the actual intent to cause injury' and 'non-dischargeability takes a deliberate or intentional *injury* not merely . . . a deliberate or intentional *act* that leads to injury.'" *Id*. at 1128 (quoting *Geiger*, 523 U.S. at 61). It found that the State Court jury verdict established that the defendant's intent was to *deceive* the plaintiff on the issue of insurance coverage. It did not establish an intent to *injure* the plaintiff. *Id*. at 1129. Also, the state court jury was instructed that if it found Moore's conduct to be willful and malicious, it could award exemplary damages. *Id*. at 1129 n.3. The Tenth Circuit found it significant that no exemplary damages had been award. *Id*.

The Court will apply these principles to the case at bar. The State Court entered a judgment on the merits of the Plaintiff's claims. The judgment was entered after a hearing. The Plaintiff had an opportunity in the State Court to present any and all theories of recovery against the Defendant that were applicable to the Defendant's role in bringing about the Plaintiff's injuries. Plaintiff did, in fact, plead a theory of recovery based in intentional tort but the State Court specifically found instead that liability against the Defendant was based in negligence and in statutory vicarious liability. By contrast, the State Court found the conduct of the co-defendants in the State Court action to be "intentional and outrageous" and, on that basis, awarded exemplary damages against the co-defendants. It made no award of exemplary damages against the Defendant.

The State Court, after a full and fair hearing on the merits, specifically found the Defendant's conduct to be negligent. Because the Plaintiff had pleaded a theory of recovery based on intentional tort, the State Court necessarily rejected that theory in finding the Defendant's conduct to instead be negligent.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

The precise issue for this Court is whether the State Court's rejection of the Plaintiff's intentional infliction of emotional distress theory[2] forecloses the Plaintiff from asserting a theory of liability for intentional tort that was not presented to the State Court. In this Court, the Plaintiff raises a theory not advanced previously. In *Plaintiff's Supplement to Response to Defendant's Motion for Summary Judgment* (docket #37), Plaintiff now characterizes Defendant's actions as aiding and abetting her sons' attack on the Plaintiff and argues that liability against the Defendant, on that theory, is the same as the actual perpetrator's liability. In particular, the Plaintiff argues that Defendant aided and abetted the assault and battery and, because liability for aiding and abetting is the same as the liability of the primary tortfeasors, he can establish liability under § 523(a)(6) if he proves his aiding and abetting claim.

The intent issue that was actually litigated in the State Court was the Defendant's intent to inflict emotional distress upon the Plaintiff. The litigation of that issue and the State Court's rejection of the Plaintiff's theory cannot stand as an adjudication of the Debtor's intent to cause the Plaintiff's physical injuries. Thus, the Court cannot read the State Court's rejection of the Plaintiff's theory of intentional infliction of emotional distress to categorically foreclose the Plaintiff from proving Defendant's intent to harm the Plaintiff under a different theory of liability.

B. *Res Judicata*

"Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940)). Plaintiff has litigated his claim against the Defendant in State Court where he had an opportunity to advance all causes of action he had against her. He had sufficient motivation to plead all intentional tort theories supported by the facts because of the possibility of obtaining exemplary damages and the litigation proceeded to final judgment. In fairness and justice, it would seem that should be an end to it. Indeed "[t]he fundamental policies underlying the doctrine of res judicata (or claim preclusion) are finality, judicial economy, preventing repetitive litigation and forum-shopping, and 'the interest in

---

[2] The summary judgment record may or may not provide the Court with a complete picture of the State Court's deliberations. The Court has before it the Plaintiff's State Court complaint and it has the State Court's Order re Default Judgment issued following the default hearing explaining the reasons for its judgment. It is clear that the only theory of intentional tort that the Plaintiff pleaded against the Defendant is intentional infliction of emotional distress. However, the State Court's order makes no specific reference to that cause of action. The State Court's order finds that the Defendant was negligent. It specifically references her failure to act to stop the attack against the Plaintiff in reference to her knowledge of her sons' violent tendencies. It also finds that she assisted them in relating an untrue story to the police.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

bringing litigation to an end.'" *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (quoting *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir. 1997)).

  Under Colorado state law, any and all theories of liability related to a particular transaction or occurrence are merged into a plaintiff's judgment and the doctrine of *res judicata* thereafter prevents the plaintiff from seeking further relief based on the same transaction or occurrence. *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 832-33 (Colo. Ct. App. 1996) ("*Res judicata* not only bars issues actually decided, but also any issues that might have been raised in the first proceeding but were not."). *See also* RESTATEMENT (SECOND) OF TORTS § 18 (1982) ("When a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof."). Even if Defendant had not filed this bankruptcy case, under the doctrine of *res judicata,* the Plaintiff is forever barred from going back into the State Court and seeking a recovery based on a theory of aiding and abetting even though that particular theory of recovery was not considered by the State Court in the original lawsuit.

  The rule with respect to *res judicata* (claim preclusion) in the context of dischargeability actions in bankruptcy was stated in *Brown v. Felsen*, 442 U.S.127 (1979). In that case, the Supreme Court held that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [a] debt." *Id.* at 138-39. *Brown*'s holding means that "the doctrine of res judicata, or claim preclusion, does not apply to dischargeability proceedings in bankruptcy." *In re Calvert*, 105 F.3d 315, 318 n.4 (6th Cir. 1997). *See also In re King*, 103 F.3d 17, 19 (5th Cir. 1997); *In re Nourbakhsh*, 67 F.3d 798, 801 (9th Cir. 1995); *U.S. v. Spicer*, 57 F.3d 1152, 1158 n.2 (D.C. Cir. 1995); *In re Tsamasfyros*, 940 F.2d 605, 606 (10th Cir. 1991).

  One justification for not allowing the use of *res judicata* in the context of bankruptcy court nondischargeability proceedings is that the claim being litigated in the state court is not a claim for bankruptcy dischargeability. State court litigants should not be forced to anticipate a bankruptcy filing and litigate the dischargeability issues in the state court. *Brown*, 442 U.S. at 135 ("The rule proposed by respondent would force an otherwise unwilling party to try [bankruptcy dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future."). Also important to the *Brown* court was Congress's legislative scheme to have bankruptcy dischargeability issues decided in the bankruptcy courts. *Id.* ("If a state court should expressly rule on [dischargeability] questions, then giving finality to those rulings would undercut Congress' intention to commit [dischargeability] issues to the jurisdiction of the bankruptcy court."). Thus, in the context of a proceeding to determine the dischargeability of debts in bankruptcy court, the Supreme Court has determined that other policies outweigh the policies of repose embodied by the doctrine of *res judicata*.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

### C.  Aiding and Abetting

The application of collateral estoppel does not foreclose the Plaintiff from advancing his new aiding and abetting theory in this proceeding and nor does the otherwise applicable doctrine of *res judicata* apply in this dischargeability proceeding.  But Plaintiff's burden in this Court is not met solely by demonstrating vicarious liability under that theory.  The Supreme Court's opinion in *Geiger* removed all doubt that the Defendant's state of mind with respect to an intent to injure Plaintiff is the focus of the issue in this Court under § 523(a)(6).  *Geiger*, 523 U.S. at 61.  Plaintiff refers the Court to RESTATEMENT (SECOND) OF TORTS § 876 (1979) for the applicable legal standard that will subject one to liability "[f]or harm resulting to a third person from the tortious conduct of another."  But that section contains no intent requirement.  Its focus is on the degree of assistance rendered by a defendant to the primary tortfeasor.  Merely proving that the Defendant could be held liable to the same degree as Drake and Gavin under a state law vicarious liability theory such as aiding and abetting, without also proving Defendant's intent to injure the Plaintiff, is insufficient to hold her liable under § 523(a)(6).  *See, e.g., In re Galan*, 455 B.R. 214, 222 (Bankr. D. Idaho 2011) ("A creditor's debt can not be excepted from discharge based solely on the debtor's vicarious liability for acts that were committed other than 'by the debtor.'") (citing *Yash Raj Films v. Akhtar (In re Akhtar)*, 368 B.R. 120, 133 (Bankr. E.D. N.Y. 2007) (explaining debtor's debt not excepted from discharge based on vicarious liability); *Sells v. Porter (In re Porter)*, 363 B.R. 78, 89-90 n. 5 (Bankr. E.D. Ark. 2007) (same); *Caci v. McDonald (In re Brink)*, 333 B.R. 560, 568-70 (Bankr. D. Mass. 2005) (same)); *In re Vickery*, 2011 WL 4963136, *10 (Bankr. D. Colo. Oct. 17, 2011) ("In contrast to §§ 523(a)(2) and (a)(4), a debtor's imputed or vicarious liability is not sufficient to render a debt non-dischargeable under § 523(a)(6) without proof of the debtor's intent to cause injury.").  At trial, *Geiger* requires Plaintiff to prove the Defendant's subjective intent to bring about his injuries.

### D.  The Scope of this Proceeding

The doctrine of *res judicata* is not applicable to this proceeding and collateral estoppel does not operate to conclusively establish that the Defendant did not act with intent to injure the Plaintiff.  But the Court need not conduct a re-trial of issues that were presented to and ruled on by the State Court.

The interest of judicial economy and the interest of saving the parties the expense of repeating the trial of issues that have already been considered by the State Court is not served by retrying those issues.  Colorado law recognizes that the doctrine of collateral estoppel applies to default judgments.  *Aspen Plaza Co. v. Garcia*, 691 P.2d 763, 764 (Colo. Ct. App. 1984); *Ortega v. Board of County Commissioners*, 683 P.2d 819, 821 (Colo. Ct. App. 1984).  *See also Stephan v. Rocky Mt. Chocolate Factory*, 136 F.3d 1134, 1137 (7th Cir. Ill. 1998) ("The Colorado Court of Appeals twice has addressed, in reported decisions, the issue-preclusive effects of default judgments. . . . The court found, in both cases, that a default judgment resulted in collateral estoppel.").  The amount of damages was set by the State Court and this Court will not take

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adversary No. 10-1749 HRT

evidence going to the amount of damages suffered by the Plaintiff. In addition, none of the factual findings that appear in the State Court's Order re Default Judgment will be re-tried in this Court. The focus of trial in this Court will be actions taken by the Defendant that caused Plaintiff's injuries and that were done with an intent to bring about those injuries.

### III. CONCLUSION

The Court will deny Defendant's Motion. The doctrine of collateral estoppel requires *inter alia* that an issue to be excluded from litigation in a subsequent proceeding must be identical to the issue that was previously decided. The Court cannot find the State Court's implicit determination that the Defendant did not act with intent to cause the Plaintiff emotional distress is identical to the issue in this Court of whether she acted with intent to cause him injury. Whether the Defendant acted with intent to cause injury to the Plaintiff is a broader question than intent to cause emotional distress. As a consequence, the State Court's conclusion that Defendant is liable for negligence in connection with the intentional infliction of emotional distress cause of action cannot categorically exclude the possibility that she may have acted with intent to cause the injuries Plaintiff sustained.

Therefore, it is

**ORDERED** that *Defendant's Motion for Summary Judgment* (docket #26) is DENIED.

Dated this __9th__ day of February, 2012.

BY THE COURT:

_____
Howard R. Tallman, Chief Judge
United States Bankruptcy Court