UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: ) | |
| ) | |
| **MARY DIAN SMITH,** ) | Case No. 10-27260 HRT |
| ) | **Chapter 7** |
| **Debtor.** ) | |
| ) | |
| **RAY RICHARDS,** ) | |
| ) | Adversary No. 10-1749 HRT |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **MARY DIAN SMITH,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER ON DEFENDANT'S MOTION
## FOR JUDGMENT ON PARTIAL FINDINGS

On May, 21, 2012, the Court convened the trial of Plaintiff's *Amended Objection to Discharge of Debt Pursuant to 11 U.S.C. §523(a)(6) and Complaint in an Adversary Proceeding* (docket #4). This matter comes before the Court upon the Defendant's verbal motion for judgment on partial findings made at the close of the Plaintiff's evidence. The Court heard the parties' arguments; has reviewed the evidence; and is ready to rule.

### I.  FACTS

The Court adopts the following factual findings of the District Court of Boulder County, Colorado, (the "State Court"):[1]

> On August 10, 2008, while camping in a national park in Boulder County, the Plaintiff and his sons were shooting clay pigeons in a legal and safe way when the Bradshaws complained about the shooting. The Plaintiff and his sons stopped shooting and were eating lunch when the Bradshaws started lobbing grapefruit-sized rocks toward their campsite. The Plaintiff was trying to get them to stop when the Bradshaw camp charged them. The leader was Drake Bradshaw. Drake

---

[1] The State Court made its factual findings after hearing Mr. Richards' testimony at a default hearing in 2009. Those findings as to the progress of Mr. Richards' recovery, employment status and general economic status reflect findings made at that time and may not reflect Mr. Richards' current situation.

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

Bradshaw ran into the Plaintiff and the Plaintiff pushed him away. Drake Bradshaw punched him several times. He was also hit in the back of the head by Quinten Bradshaw. Gavin kicked him in the head three to five times. Gavin Bradshaw hit the Plaintiff's oldest son. The Plaintiff was hit on the side of the head with a rock thrown by Drake Bradshaw. Eventually the Bradshaws ran back to their campsite and broke camp. A woman named Alegra Hager from the Bradshaw camp came to help him. She told him that "they do this all the time." Mary Bradshaw, the mother of Drake, Gavin, and Quinten, was present in the camp. The Bradshaws moved their camp away approximately 200 yards and spent the time before the police arrived developing a story that they all told to the police. Mary Bradshaw was part of this process. When the police arrived, the Bradshaws had their story ready but eventually the inconsistencies and the physical evidence caused them to admit their involvement. Mary Bradshaw said that she had seen the beginning of the fight only (enough to pin the aggression on the Plaintiff).

Gavin and Drake were charged with several felonies. Drake Bradshaw has juvenile adjudications in 04JD358 for criminal mischief, 06JD674 for assault, 0710435 for trespass, 07JD51 0 for assault, and 09T585 for driving under the influence in addition to the adult felony charge of Second Degree Assault with Serious Bodily Injury in this case 08CR1400. Gavin has juvenile adjudications in 041075 for assault, 05101567 for trespass,07JD437 for criminal mischief, in addition to this case which is 08JD545 for assault. Gavin is now in the Department of Youth Corrections.

The Plaintiff's injuries included a concussion, a traumatic brain injury, a broken skull, a broken eye orbit, crushed nasal passages, and broken bones. He was flown to St. Anthony Hospital by Flight for Life. He was in severe pain. He was frightened for his life. After surgery, he experienced a pulmonary embolism that stopped before it could cause a stroke. The process of treatment caused him great emotional harm because there was a significant chance that the embolism would still reach his brain.

He is left with no surface nerve feeling on the left side of his face and above his left eyebrow. This is a permanent condition. Titanium screens and screws were used to reconstruct his orbital bone and eye area. His eyesight went from 20/15 to 20/100 in each eye. He has experienced some memory loss and difficulty with cognition in the evening. He experiences some movement and shifting shapes in his peripheral vision.

>    He experienced significant pain for several months and still experiences pain on occasion in his head and hand.
>
>    He lost his job while he was in the hospital because they did not believe that he could perform his duties. He was making $52,000 per year and had full benefits. He continues to be unemployed. The loss of his job has devastated him and his family. He is close to losing his house. Prior to the incident, he was in good financial condition. Now he is struggling financially. His children were also emotionally traumatized.

*Order Re Default Judgment, Richards v. Bradshaw*, No. 2009CV766 (Dist. Ct. Boulder County, Colo. Dec. 30, 2009) (Plaintiff's Exhibit 1).

## II.  DISCUSSION

A.  Motion for Judgment on Partial Findings

Following the presentation of Plaintiff's case, the Defendant moved for a judgment on partial findings under FED. R. CIV. P. 52(c).[2] Rule 52(c) provides the bench trial analog to a motion for a directed verdict made in the context of a trial to a jury.  Under the rule,

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

FED. R. CIV. P. 52(c).

> Judgment is appropriate under Rule 52(c) where a plaintiff fails to make a prima facie case, or, even if a prima facie case has been made, the court determines that the preponderance of the evidence is against the plaintiff.  A motion under Rule 52(c) is not the same as a motion for a directed verdict. The court neither draws special inferences in the nonmovant's favor, nor considers the evidence in the light most favorable to the nonmovant. Because the court is the finder of fact in a bench trial, as in the present case, the bankruptcy judge has discretion on a Rule 52(c) motion to weigh evidence and determine credibility.

---

[2] Made applicable to bankruptcy proceedings by FED. R. BANKR. P. 7052.

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

*Follett Higher Education Group, Inc. v. Berman*, 427 B.R. 432, 434 (N.D. Ill. 2010) (citing *In re Regency Holdings (Cayman)*, 216 B.R. 371, 374 (S.D. N.Y. 1998)).

B.  Nondischargeability Standard under 11 U.S.C. § 523(a)(6)

> A discharge under section 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt--for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a)(6).

In the case of *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court discussed the willfulness prong of the test for nondischargeability under § 523(a)(6). *Geiger* established the principle that the willfulness element under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Id. at 61. The actor must "intend 'the consequences of an act,' not simply 'the act itself.'" Id. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).  In the legislative history to § 523(a)(6), Congress said that "[u]nder [§ 523(a)(6)] 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 139 U.S. 473 (1902), held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." H.R.Rep. No. 595, 95th Cong., 1st Sess. 365, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320-21.

C.  Application of Facts to the Law

The Court takes as true all of the evidence presented by the Plaintiff.  The Court, as finder of fact, need not do so under Rule 52(c) and the Court does so not merely as a matter of form.  The Court has evaluated Mr. Richards' testimony and finds him more than credible.  By contrast, the Court was unimpressed by the Defendant's credibility on the witness stand.

Specific issues seem to have drawn particular attention from the parties such as the distance between campsites and the condition of Defendant's vision.  Those issues are not material to the Court's determination.  What is critical is the lack of evidence from which the Court may make any permissible inference to conclude that this Defendant intended for Mr. Richards to suffer the injuries that he suffered at the hands of her children.

Mr. Richards argues that the Defendant failed to act to prevent her minor child from injuring him and such failure may be the basis of a finding by this Court that she intended to bring about his injuries.  The foundation of any such argument must be an affirmative duty owed by the Defendant to the Plaintiff under the facts of this case.  The duty identified by the Plaintiff is the statutory duty of parents to supervise their minor children.  The statute provides that

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

> Any person is entitled to recover damages in an amount not to exceed three thousand five hundred dollars in a court of competent jurisdiction from the parents of each minor under the age of eighteen years, living with such parents, who knowingly causes bodily injury to that person, including bodily injury occurring on property belonging to or used by a school district. The recovery shall be the actual damages in an amount not to exceed three thousand five hundred dollars, in addition to court costs and reasonable attorney fees.

COLO. REV. STAT. § 13-21-107(2). Debtor's son Gavin was a minor at the time of the incident and the State Court found the Defendant vicariously liable under § 13-21-107(2) on account of Gavin's participation in the incident.

For the purposes of this Order only, the Court will assume, without deciding, that § 13-21-107(2) does supply the type of affirmative duty that may serve as a foundation for the Plaintiff's argument.[3]

In the case of *Blocker v. Patch (In re Patch)*, 526 F.3d 1176 (8th Cir. 2008), the court reviewed a lower court decision that "concluded that the failure to act in the face of a duty can constitute an intentional tort." *Id*. at 1181. The case involved the death of a child due to abuse committed by the mother's boyfriend. The facts were egregious and the lower court found that the mother had failed in her duty to protect her child. The Eighth Circuit said "we question whether a debtor's breach of a legal duty to act can ever constitute a 'willful . . . injury.'" *Id*. The court noted that both it and the Supreme Court "have interpreted § 523(a)(6) consistent with the Restatement (Second) of Torts" and that the Restatement "appears to take the categorical position that the failure to act in the face of a legal duty can never constitute an intentional tort." *In re Patch*, 526 F.3d at 1181-82. *See also Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848 (8th Cir. 1997) *aff'd* 523 U.S. 57 (1998).

The *Patch* court raises a serious question whether the breach of a duty to act can ever exceed the bounds of negligent or reckless behavior and constitute an intentional tort that may result in the nondischargeability of a debt under § 523(a)(6). However, in its reversal of the lower court, the Eighth Circuit does not resolve that particular issue. *Id*. at 1182. Instead, it rests its decision on the absence of evidence that would allow it to infer that the debtor's actions or her failure to act were willful under 11 U.S.C. § 523(a)(6). *Id*.

---

[3] In fact, the Court doubts that § 13-21-107(2) truly serves the Plaintiff's purpose. Liability under § 13-21-107(2) is not fault based. It is a strict liability statute that applies equally to the most vigilant of parents as well as the least vigilant. Moreover, the statute itself sets an upper limit of $3,500.00 plus fees and costs that an injury victim may recover from the parent of a child who inflicts the injury.

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

The Plaintiff has not pointed the Court to any published opinion holding that the willfulness prong of 11 U.S.C. § 523(a)(6) can be satisfied by a finding that a debtor has breached a duty to act. Nor has the Court independently located such authority. But the Court will refrain – as does the Eight Circuit in *Patch* – from deciding this case on the basis that circumstances may never exist where the failure to act constitutes willful conduct that satisfies § 523(a)(6)'s willfulness prong. The more basic issue that cannot be overcome is the absence of evidence to support an inference that the Defendant intended for Mr. Richards to be injured.

If the Court is to find that the Defendant intended to cause Mr. Richards' injuries, it must determine her intent by way of inference. "To be legitimate or permissible, an inference must be deduced as a logical consequence of facts presented in evidence, and there must be a logical and rational connection between the facts in evidence and the fact to be inferred." *U.S. v. Michelena-Orovio*, 702 F.2d 496, 504 (5th Cir. 1983).

The Restatement's apparent adoption of the position that an intentional tort may not be based on the breach of a duty to act and lack of case authority finding that the breach of a duty to act can form a sufficient predicate to find liability under § 523(a)(6) may well represent a recognition of a practical problem. An individual's intent to injure is never subject to direct observation. Courts typically infer intent from other actions of a defendant. *In re Radcliffe*, 372 B.R. 401, 419 (Bankr. N.D. Ind. 2007) (A "creditor must establish by at least circumstantial evidence that the debtor had a subjective state of mind to commit injury . . . ."). Even inferring intent from an individual's overt actions necessarily involves a degree of speculation in all but the rarest of cases. But at least an overt act allows a finder of fact to base its inference on something that is observable and subject to proof. The chain of speculation required to infer the Defendant's subjective intent from the absence of any overt act on her part presents the Plaintiff with a formidable hurdle.

For the sake of ruling on the Defendant's Rule 52(c) motion only, the Court assumes that the Defendant's eyesight is good enough to observe her children beating Mr. Richards at the time of the incident. It assumes that her efforts at controlling her young lab-mix puppy were not so consuming as to prevent her from making some attempt to restrain her children's conduct. The Court also assumes, given Drake's and Gavin's prior assault charges, she was aware they both are capable of violent behavior. Even giving Mr. Richards the benefit of every permissible inference that might be drawn from the evidence, the Court cannot make the leap from Defendant's inaction to a finding that she subjectively intended Mr. Richards to incur the injuries he suffered.

As noted above, it is permissible for the Court to infer a fact, such as Defendant's intent for Mr. Richards to be injured, only if there is a logical connection from the facts established in evidence and the fact that the Court seeks to infer. The fact that the Defendant failed to act to restrain her minor child from injuring Mr. Richards does not logically lead to the conclusion that

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

the most probable reason she failed to act was her subjective intent that Mr. Richards should be injured. Other reasons are just as likely. Possibly she did not feel herself capable of restraining her children. Possibly she feared that getting involved in a violent confrontation endangered her own safety. There are any number of possibilities. From the evidence the Court has before it, all of those possibilities are speculative and the Court lacks evidence from which it might conclude that the most probable of the possibilities is that she intended Mr. Richards to be injured.

The evidence in combination with the Defendant's lack of candor on the witness stand make her an altogether unsympathetic defendant. The Court has no credible evidence of any attempt on her part to assume the role of a responsible adult and restrain the conduct of her children. Even though the evidence does not persuade the Court that the Defendant intended for her children to injure Mr. Richards, by all appearances, she was indifferent to his fate. But, even if the Defendant's conduct could be found to constitute reckless disregard, under *Kawaauhau*, even reckless behavior does not reach the level of intent necessary to find a debt nondischargeable under § 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

### III. CONCLUSION

It is the Plaintiff's burden to prove that the Defendant intended to cause Mr. Richards' injuries. The Plaintiff has rested his case. Based on the evidence presented by the Plaintiff, the Court is unable to conclude that Defendant possessed a subjective intent that Mr. Richards should suffer injuries. Without evidence from which the Court may reasonably conclude that the Defendant intended that the Plaintiff should suffer those injuries, the Court cannot find that Plaintiff's State Court judgment against the Defendant is a debt for willful and malicious injury as required under 11 U.S.C. § 523(a)(6) and it is appropriate to grant the Defendant's Rule 52(c) motion for judgment on partial findings.

The Court appreciates this result may seem harsh, given Plaintiff's serious physical injuries sustained in a horrific beating by the Defendant's children. Results in cases of this type may often seem harsh due to the nature of cases that arise involving allegations of willful and malicious injury under § 523(a)(6) where plaintiffs seek relief on account of very serious injuries that are the result of a debtor's conduct. *See, e.g., Kawaauhau v. Geiger*, 523 U.S. 57 (1998) (amputee's medical malpractice judgment against physician dischargeable under § 523(a)(6) because judgment based on negligent or reckless conduct and not on an intentional injury); *Blocker v. Patch (In re Patch)*, 526 F.3d 1176 (8th Cir. 2008) (mother's liability for child's wrongful death not willful and malicious under § 523(a)(6) even though she knowingly left child in the care of an abusive boyfriend because she had no intent that her failure to protect her child should result in his death); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125 (10th Cir. 2004) (severely injured burn victim's $6.5 million state court judgment based on employer's fraudulent misrepresentation concerning his insurance coverage held to be dischargeable under § 523(a)(6)

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS
Adversary No. 10-1749 HRT

because employer's intent was to deceive the employee concerning insurance not that the employee should be injured).

In accordance with the above discussion, it is

**ORDERED** that Defendant's motion for judgment on partial findings under FED. R. CIV. P. 52(c) is GRANTED. It is further

**ORDERED** that Plaintiff's *Amended Objection to Discharge of Debt Pursuant to 11 U.S.C. §523(a)(6) and Complaint in an Adversary Proceeding* (docket #4) is DISMISSED.

Dated this 23rd day of May, 2012.

**BY THE COURT:**

*Howard Tallman*

Howard R. Tallman, Chief Judge
United States Bankruptcy Court